IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO.: 2:22-cr-139 |
| ) | |
| vs. ) | |
| ) | |
| **FREDRICK WENDELL MCCRAY, et. al.** ) ) | |

## MOTION FOR ORDER TO SHOW CAUSE

Comes now the United States of America, by and through its undersigned attorney, and moves this Honorable Court pursuant to the Court's inherent power to discipline attorneys who appear before them for an Order to Show Cause why respondent attorney David Aylor and David Aylor Law Offices should not be sanctioned for violating the Court's Standing Discovery Order. The Government requests sanctions in the form of an order of reprimand and an order directing that Aylor and/or Aylor Law Office not seek or accept payment of fee or expenses for representation of the Defendant, LaJustin Williams.

## PROCEDURAL HISTORY

On February 22, 2022, a federal grand jury indicted Defendant LaJustin Williams on multiple offenses related to drug trafficking. ECF #3. On February 24, 2022, Williams was taken into custody and placed in the Al Cannon Detention Center. ECF # 47. On February 25, 2022, the Court issued its Order Governing Discovery. ECF #107. The Court's order limits dissemination of discovery materials to defendants. In pertinent part, the order mandates that:

> Defense counsel may disclose the contents of discovery materials to the defendant subject to the following provisions. Counsel may allow the defendant to review discovery furnished by the United States and labeled as "restricted material" in the presence of counsel or counsel's employees. **Defense counsel shall not**, however, provide the defendant copies of such restricted material.

> Restricted material or restricted discovery means and includes: 1) any Grand Jury material, and 2) any other material deemed by the United States to require such special designation because of security or privacy concerns. The Government shall clearly label such materials "Restricted Access" and they shall be segregated from the contents of the other discovery materials provided to counsel.

(Emphasis Added).

On March 22, 2022, attorney David Aylor of the David Aylor Law Offices entered a notice of attorney appearance for Williams. ECF #234.[1]

The Government learned of a potential unlawful dissemination of discovery materials on July 28, 2022, when a target of a separate investigation (TARGET #1) contacted his federal probation agent to say that TARGET #1 had learned about a federal investigation into his activities and that there may be a potential witness against him. On August 3, 2022, the Drug Enforcement Agency (DEA) reported the compromise of ongoing surveillance of TARGET #1 and that TARGET #1 had altered his habits and behaviors. On August 5, 2022, a DEA Confidential Source (DEA CS) reported that INMATE #1,[2] a prisoner housed in the same pod of the Al Cannon Detention Center as Williams, announced on his Facebook page that he had paperwork proving the identity of a cooperating witness. On August 7, 2022, two individuals posted a copy of a cooperating witness' FBI 302[3] on INMATE #1's Facebook page. On August 8, 2022, the FBI and the Charleston County Sheriff's Office conducted a search of INMATE #1's jail pod.[4]

---

[1] An additional attorney of the David Aylor Law Offices entered a notice of appearance on June 16, 2022. ECF #326.

[2] Although INMATE #1 is not a co-defendant in Williams' case, subsequent investigation has revealed that INMATE #1 knows several of the defendants in Williams' case and has drug trafficking and gang associates in common with these defendants.

[3] An FBI 302 is the agent's written report of a witness interview.

[4] Multiple co-defendants from Williams' case are housed in the same pod as INMATE #1. The Al Cannon Detention Center indicates that their inmate pods hold 64 inmates, with up to 4 beds in a bay. These 64 inmates have unrestricted movement within, and access to, the entire pod (including

Investigators discovered three copies of the published FBI 302 between Williams' and Tyrone Cox's bunks. In addition to the offending FBI 302, investigators discovered 10 envelopes containing copies of the Title III affidavits from the case, hundreds of Title III linesheets from intercepted telephone calls,[5] and other restricted access discovery in Williams' bunk.

On August 9, 2022, an FBI Confidential Source (FBI CS) from a separate investigation reported receiving a copy of the offending FBI 302 in a text message. As a result of the disclosure, the FBI CS indicated a reluctance to continue cooperation. On August 10, 2022, the DEA reported threats of violence to the cooperating witness whose statement was published on Facebook.

On August 16, 2022, the Court held proceedings to determine the source of the unauthorized transfer of discovery materials. During the hearing, the Court inquired of each defense counsel in this case if they had handled discovery according to the standing discovery order. Counsel for each defendant, save David Aylor, represented to the Court that they had handled discovery in compliance with the order. When questioned, Mr. Aylor admitted that he and his firm had provided copies of the restricted access discovery in contradiction to the court's order.

> THE COURT: So your client's review, then, would have been outside your presence and also outside the presence of anyone that works for you; correct?
>
> MR. AYLOR: Correct.
>
> …
>
> THE COURT: But do you not -- you would agree that this is in violation of the discovery order? What you've described up to now is a violation of the discovery order because you, nor anybody from your office, was present with your client while they reviewed this.

---

other inmates' beds and drawers).

5 In addition to being labeled restricted access, the Title III affidavits and linesheets are still under seal; a limited unsealing was permitted only for discovery purposes.

> MR. AYLOR: Your Honor, I understand the order specifically to this, but I felt it was not of the material that is not restricted; that he would be able to review that material as long as it's in a secure setting within the jail, which is what we tried to set up. Now, in regards to specifically any of the 302 material, the restricted material, that obviously has to be with an attorney or an employee of the law firm.

Mr. Aylor attempted to draw a distinction between restricted access discovery and an alleged type of other discovery that he claimed could be reviewed and kept by his client outside of his presence. The Government corrected the record as follows:

> THE GOVERNMENT: Yes, Your Honor. All the materials were restricted access. And to be very, very clear and to put a very fine point on this, all of the materials are restricted. He was -- Mr. Aylor sent a letter explaining this in detail. When he received a copy of the discovery, it contained a notification that the restricted materials were segregated. Everything marked Bates stamp X through Y are restricted access.
>
> It appears that Mr. Aylor or his staff or a law clerk simply disregarded not only the Court's order but also our very clear instructions as to what was restricted material. If he were going to provide nonrestricted materials to his client, there would be no materials to show because everything we had was either grand jury or restricted access. Mr. Aylor made no -- asked no questions of us on this point. He certainly made no motions to the Court to be allowed to show his client material that he did not believe should be restricted. He made no communication whatsoever on this point. It is a clear violation of this Court's order.
>
> MR. AYLOR: Your Honor, I'm not denying anything that the Government has just stated. Again, I take full responsibility for any violations that occurred within my office, no matter who participated in it, in regards to Mr. Williams's discovery and the discovery order.

The Government then placed on the record its desire to have Mr. Aylor removed from the case. The Government indicated that it believed Mr. Aylor had created an un-waivable conflict of interest by his conduct and thus should be relieved.

> THE GOVERNMENT: Yes, Your Honor. Just to place the Court and Mr. Aylor on notice, the Government will be briefing for the Court a motion to have Mr. Aylor relieved. We do believe he has created a conflict for himself in this case. The Government may move forward with additional charges against his client for witness intimidation should the merits of the case and the evidence bear that out. But even if we do not move forward with an additional charge against his client, Your Honor, it appears that because of this leak and the subsequent things that have

4

happened, his client, if found guilty, may be subject to a sentencing enhancement for witness intimidation.

If that is the case, Mr. Aylor has put himself in the untenable position of being both an advocate for his client and a witness against his client because we would certainly wish to call him to state whether or not he provided these materials that ultimately led to the intimidation. Obviously, Your Honor, that hearing is not for today. The Government certainly needs to brief all of these issues so that the Court can review and Mr. Aylor can have a proper -- have the proper time to respond. But just for --just for the record, the Government will be moving forward with a motion to disqualify Mr. Aylor.

After concluding its questions with the remainder of defense counsel, the Court made the following findings:

THE COURT: All right. Well, I think even though some of the lawyers have gone, but for Mr. Aylor, I think it's clear to everybody that was here, everybody that was here and everybody that is still here that the dissemination of these restricted materials at the jail is highly concerning. First, because it puts people's lives in danger, both cooperators and their families. Second, because of the willingness of the cooperators to participate in the investigations. So I want everyone to know that the Court takes this extremely seriously, and I'm taking it all under advisement, and I'm going to need to decide what the precise consequences will be.

…

THE COURT: Mr. Aylor has created a conflict for himself; so I'm going to go ahead and direct you, Mr. Aylor, to file a motion to withdraw as counsel, and we'll get new counsel -- were you retained?

MR. AYLOR: Yes, Your Honor. I was retained.

THE COURT: We'll get new counsel appointed for Mr. Williams as soon as practicable. I do think even though the Government hasn't filed it in writing, it has verbally made the motion, and I agree with the Government that a conflict has been created as a result of that.

On August 17, 2022, David Aylor and his firm moved to withdraw as attorney for LaJustin Williams. ECF #263-264. The Court granted the motions on August 22, 2022.[6] On August 19,

---

6 The Court appointed Larry Weidner, II on August 22, 2022, for Defendant Williams. ECF #368. The Court granted an order to substitute counsel Steve Schmutz for Larry Weidner, II on September 15, 2022. ECF # 391.

5

2022, the United States Marshals Service was notified of a potential threat of violence toward an Assistant United States Attorney that was linked to this discovery leak in the jail. The Government investigated the veracity of the threat and placed the Assistant United States Attorney under U.S. Marshals Service protection.

## ANALYSIS

The Government seeks an order to show cause why respondent attorney David Aylor and respondent David Aylor Law Offices should not be sanctioned for their clear violation of the Court's standing discovery order. It is uncontested that David Aylor and David Aylor Law Offices provided copies of restricted access discovery, including cooperator statements, to an incarcerated client. As a result, they have compromised ongoing investigations, provided a means for the harassment and intimidation of witnesses, and contributed to threats against the United States. Moreover, their unlawful disclosures created a conflict of interest that has resulted in their removal from the case. It would be contrary to the interest of justice to allow David Aylor and David Aylor Law Offices to retain any fee paid by Defendant Williams as a boon for their actions.

"Federal courts have the inherent power to control the admission of attorneys to their bars and to discipline attorneys who appear before them . . . Even without a finding of contempt, a court may impose such sanctions as a monetary penalty or disbarment as part of this inherent power." *In re Morrissey*, 305 F.3d 211, 224 (4th Cir. 2002); *see also Chambers v. NASCO, Inc*., 501 U.S. 32, 49 (1991) ("The Court's prior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."); *United States v. Shaffer Equip. Co*., 11 F.3d 450, 461–62 (4th Cir. 1993) ("Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates…. Under the inherent power, a court may issue orders,

6

punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, bar persons from the courtroom, assess attorney's fees, and dismiss actions."); *United States v. Romero-Lopez*, 661 F.3d 106, 107 (1st Cir. 2011) ("We reject the attorney's characterization of the sanction as criminal contempt, . . . [Beyond civil and criminal contempt], there exists a third category of 'punitive non-contempt sanctions.'") (upholding monetary sanction for criminal attorney failing to appear); *In re Charbono*, 790 F.3d 80, 85 (1st Cir. 2015) ("In *United States v. Kouri–Perez*, we explicitly renounced the proposition that any punitive sanction is perforce a criminal contempt sanction . . . [T]he contempt power is merely one of many inherent powers that a court possesses; it is not the only type of inherent power that can be deployed."). In this matter, the Court should exercise its inherent authority to impose the sanction of a reprimand for David Aylor's misconduct in violating the Standing Discovery Order. Additionally, the Court should issue an Order directing that David Aylor and the David Aylor Law office neither seek or accept payment of fee or expenses for his representation of Defendant LaJustin Williams.

David Aylor and David Aylor Law Offices admit to the unlawful conduct at issue. There is no dispute as to whether David Aylor and David Aylor Law Offices provided copies of restricted access discovery to their client, contrary the Court's Standing Discovery Order. As Mr. Aylor plainly stated during the hearing, "I'm not denying anything that the Government has just stated. Again, I take full responsibility for any violations that occurred within my office, no matter who participated in it, in regards to Mr. Williams's discovery and the discovery order." There is ample support to sanction David Aylor and David Aylor Law Offices for this behavior. In the Western District of Virginia, the Court sanctioned an attorney for an identical breach of a Standing Order of Discovery. *In re Bragg*, No. 1:11CR00026-002, 2012 WL 566958 (W.D. Va. Feb. 21, 2012). In *Bragg*, the Court sanctioned a criminal defense attorney who "regularly practice[d] before th[at]

7

court" for violating the standard discovery order by providing copies of discovery to an incarcerated defendant. The Court entered an order formally reprimanding defense counsel. Additionally, the Court ordered that counsel could neither seek nor accept payment or fee or expense for his representation of the defendant, and the court imposed a monetary sanction of $350. *Id*. The facts in *Bragg* are indistinguishable from those in this matter. It is incumbent upon the Court to fashion a sanction under its contempt powers sufficient to protect the due and orderly administration of justice. *See Bills v. United States*, 11 F. App'x 342, 342 (4th Cir. 2001) (unpublished) ("In particular, courts may impose both monetary penalties and disbarment without a finding of contempt, as adjuncts to this inherent power.").

Based on the foregoing, David Aylor and David Aylor Law Offices have committed sanctionable conduct by violating the Court's Standing Order of Discovery. As a result, ongoing investigations have been compromised, witnesses have been intimidated, and threats of violence may have been made toward the United States. The Government seeks an Order to Show Cause why David Aylor and David Aylor Law Offices should not be sanctioned for the violation of the Court's standing discovery order and further requests a sanction in the form of Order of reprimand and an Order directing that Aylor and/or Aylor Law Office not seek or accept payment of fee or expenses for representation of the Defendant, LaJustin Williams.

        Respectfully Submitted,

        ADAIR F. BOROUGHS
        UNITED STATES ATTORNEY

        BY: s/T. DeWayne Pearson
        T. DeWayne Pearson (Fed. ID # 10859)
        Assistant U.S. Attorney
        1441 Main Street, Suite 500
        Columbia, South Carolina 29201
        (803) 929-3000 (office)
        (803) 256-0233 (facsimile)
        DeWayne.Pearson@usdoj.gov

Columbia, South Carolina
September 19, 2022